IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LARA NASH | § | |
| | § | |
| VS. | § | CA No. _____ |
| | § | |
| THE PRUDENTIAL INSURANCE | § | |
| COMPANY OF AMERICA and | § | |
| OCCIDENTAL PETROLEUM | § | |
| CORPORATION WELFARE LONG | § | |
| TERM DISABILITY COMPONENT | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

LARA NASH, Plaintiff, files this Original Complaint asserting causes of action in law and equity for relief against The Prudential Insurance Company of America and Occidental Petroleum Corporation Welfare Long Term Disability Component, Defendants.

## I.
## PARTIES

1.  Plaintiff, Lara Nash ("Nash"), is a resident citizen of Houston, Texas.

2.  Defendant, The Prudential Insurance Company of America ("Prudential"), is a domestic or foreign insurance company licensed to do business and doing business in the state of Texas, and can be served with process by serving its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136, or wherever it may be found.

3.  Defendant, Occidental Petroleum Corporation Welfare Long Term Disability Component ("Plan"), is a domestic or foreign entity doing business in the state of Texas, and can be served with process by serving Occidental Petroleum Corporation,

1

10889 Wilshire Blvd., Los Angeles, CA, 90024, or wherever it may be found.

## II.
## JURISDICTION AND VENUE

4.   This action against Prudential and the Plan arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.* This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

5.   Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Defendants maintain business activity in and may be found in this district.

6.   Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

7.   Lara Nash was hired by Oxy, Inc. as a chemical operator and rescue team member (Firefighter) in January 2007. As a full time employee, Ms. Nash was enrolled in Occidental Petroleum Corporation's employee welfare benefit Plan that included benefits for long term disability (LTD).

8.   Occidental Petroleum Corporation's LTD Plan was part of the company's Group Insurance Policy issued by Prudential. The Group Contract No. was G-50262-TX (the "Policy"). The Policy provided income protection if the covered employee became disabled as a result of injury or sickness. Ms. Nash was an eligible employee.

9.   Occidental Petroleum Corporation is the Plan Sponsor and Plan Administrator.

10.   Prudential is the Insurer and Claims Administrator for the Plan.

2

11.  Ms. Nash was a hard worker who loved her job. She was able to get a high paying position at Oxy, Inc. despite having nothing more than a GED.

12.  By May 2010, Ms. Nash could no longer do the material and substantial duties of her own job because of her deteriorating health. She was diagnosed with fibromyalgia, carpal tunnel syndrome, and other painful and limiting conditions. Those conditions manifested in fatigue and numbness in her hands and arms. They caused her to drop objects almost constantly.

13.  She tried to compensate , but it got to the point where she could not deal with it any longer. Ms. Nash was out of work from May 21, 2010 to June 29, 2010. When she tried to return to work, she was sent home within six (6) hours.

14.  In August 2010, Dr. Sadeghi advised Ms. Nash that it was no longer safe for her to continue working. Ms. Nash promptly filed for LTD benefits.

15.  Prudential initially denied Ms. Nash's LTD claim. In doing so, it claimed that "fibromyalgia is a controversial illness" and suggested that she just needed aerobic exercise and psychiatric treatment.

16.  Ms. Nash promptly appealed Prudential's denial of her claim on May 27, 2011. Along with her appeal, she submitted medical records, witness statements, and job descriptions that supported her disability claim. She sent additional medical evidence in support of her claim on July 6, 2011.

17.  On July 29, 2011, Prudential reversed its denial and finally approved Ms. Nash's LTD claim. It paid back benefits from November 19, 2010 to July 31, 2011. Prudential also asked Ms. Nash to sign a Reimbursement Agreement agreeing to repay Prudential if she was approved for Social Security Disability Benefits. Ms. Nash signed and

returned the Reimbursement Agreement to Prudential.

18.    On June 30, 2012, Ms. Nash was approved for Social Security Disability Benefits.

19.    Prudential has known since at least November 2012 that Ms. Nash was approved for Social Security Disability Benefits.

20.    Prudential received a lump sum reimbursement for its overpayment of Ms. Nash's LTD claim out of her Social Security Disability Benefits. Following that payment, Prudential reduced Ms. Nash's LTD claim by the amount of her Social Security Disability Benefits.

21.    Prudential's policy defined disability as, among other things, a condition in which the beneficiary is "unable to perform the material and substantial duties of your regular occupation" during the first 24 months of disability. This provision is commonly known as "own occupation" disability. After the first 24 months of disability, disability is defined as being "unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience". This is commonly known as "any occupation" disability.

22.    In November 2012, the Policy's disability definition changed from "own occupation" to "any occupation". Prudential continued to pay Ms. Nash's LTD claim.

23.    On December 12, 2014, Prudential asked Ms. Nash to complete several forms and a medical authorization.

24.    On January 14, 2015, Prudential advised Ms. Nash that it would terminate her LTD claim if it did not receive updated medical records by February 13, 2015.

25.    On or about February 13, 2015, Prudential terminated Ms. Nash's LTD claim.

26.    On March 9, 10, 11, 17, and 25, 2015, surveillance was conducted on Ms. Nash by a

company hired by Prudential. No activity was observed.

27.   On March 23, 2015, Prudential reinstated Ms. Nash's LTD claim.

28.   On May 7, 2015, Dr. Fujii noted that Ms. Nash suffered from Fibromyalgia, migraines, an L4-L5 central disc protrusion that contacted both L5 nerve roots, and peripheral neuropathy.

29.   That same day, surveillance was conducted on Ms. Nash by a company hired by Prudential. She was observed leaving her home to go to Dr. Fujii's office. Additional surveillance on May 8, 9, and 10 showed less than 2 hours of total activity.

30.   An MRI of the lumbar spine taken in May 2015 revealed Ms. Nash had a left sided disc herniation at L4-L5 with mass effect on the L5 nerve root.

31.   On June 4, 2015, Prudential scheduled a review of Ms. Nash's medical records through MES Solutions. Prudential and/or MES Solutions selected Dr. Mark Burns to review the medical records.

32.   On July 9, 2015, Ms. Nash was admitted to Clear Lake Regional Hospital due to migraines and for a spinal tap.

33.   On July 30, 2015, Dr. Fujii determined that Ms. Nash suffered from Lyme Disease, migraines, Fibromyalgia, a disc protrusion at L4-L5, osteoporosis, and a demyelinating lesion.

34.   On September 28, 2015, Prudential terminated Ms. Nash's LTD claim. It concluded that the Policy's 24 month limitation for mental illnesses applied to her claim because Ms. Nash suffered, at least in part, from "mood symptoms". It also concluded that she did not meet the Policy's definition for "any occ" disability because she could work as a lab tester, gas inspector, or chemical operator.

35.  In terminating Ms. Nash's claim, Prudential relied on a medical record review by Dr. Mark Burns. Dr. Burns watched selected surveillance video from May 7 and 8, 2015, then concluded that the limited video did not support any impairment. He also concluded that "fibromyalgia is usually not impairing". Finally, Dr. Burns concluded that Ms. Nash had no medically necessary restrictions or limitations from May 21, 2010 onwards.

36.  However, Dr. Burns lacked the training, education, or experience to reach those conclusions. He also lacked the objectivity needed to adequately review Ms. Nash's medical records. In 2013, a Court stated that Dr. Burns's file review was "unreasonable" and did not reflect a "deliberate, principled reasoning process, nor are their conclusions supported by substantial evidence". Prudential knew of this bias but still persisted in its reliance on Dr. Burns's opinions.

37.  In reviewing whether Ms. Nash was able to perform other occupations, Prudential hired Seacoast Rehabilitation to prepare an Employability Assessment in June 2012. Seacoast concluded that Ms. Nash could work as a lab tester, gas inspector, or chemical operator (her own occupation).

38.  Ms. Nash promptly appealed Prudential's termination of her claim on March 18, 2016. She submitted additional evidence and medical records on March 29, 2016.

39.  On April 8, 2016, Prudential requested records related to Ms. Nash's Social Security disability claim.

40.  Three days later, Ms. Nash provided an authorization permitted Prudential to obtain her complete Social Security file. She also requested a copy of that file once it was received by Prudential.

41.  Ms. Nash sent another authorization to Prudential on April 19, 2016.

42.  On April 29, 2016, Prudential advised Ms. Nash that it was unable to make a determination on her appeal because it did not have the Social Security Administration file. Prudential also noted that it was "[Ms. Nash's] responsibility" to provide this file by no later than June 16, 2016.

43.  Ms. Nash asked Prudential why it had not lifted a finger to obtain her Social Security file despite knowing since at least November 2012 that she applied for Social Security benefits. Ms. Nash also requested proof of any legal authority stating that she was required to spend her own limited funds to obtain her Social Security file.

44.  On May 20, 2016, Prudential advised that it had finally requested a copy of Ms. Nash's file from the Social Security Administration. It did not explain why it had waited almost four (4) years to do so.

45.  On June 16, 2016, Prudential again advised that it was unable to make a determination on Ms. Nash's appeal because it did not have the Social Security Administration file. Prudential again noted that it was "[Ms. Nash's] responsibility" to provide this file by no later than July 15, 2016.

46.  On July 5, 2016, Ms. Nash provided a third signed authorization to Prudential.

47.  On July 15, 2016, Prudential advised that it was unable to decide Ms. Nash's appeal and that it needed a forty five (45) day extension to make a decision. It anticipated making a decision by no later than August 28, 2016.

48.  On August 16, 2016, Prudential advised that it would not be able to decide Ms. Nash's appeal by August 28, 2016, the 90th day of the appeal review period. It requested an additional extension to September 9, 2016.

49.   The Policy states that if Prudential is unable to make a decision on an appeal within 90 days, "the claim shall be deemed denied on appeal".

50.   If a Claims Administrator fails to act in the time provided by the Plan or the regulations, the claim is deemed denied by operation of law and the plaintiff is free to pursue all legal remedies under ERISA without having to further exhaust administrative remedies. 29 C.F.R. §2560.503-1(l).

51.   Ms. Nash continues to suffer from the disabling effects of Fibromyalgia, tingling in her hands, numbness in her hands and arms, abdominal pain, neck and shoulder pain, sensitivity to light and sound, dizziness, migraines, pain, the side effects of her many medications, Lyme Disease,  disc protrusion at L4-L5, osteoporosis, and a demyelinating lesion.

52.   Ms. Nash's claim fit within the Policy's definition of disability. She remains disabled from any occupation.

53.   Having exhausted her administrative remedies, Lara Nash brings this action to recover the LTD benefits promised in the Policy and the Plan.

**IV.**
**CLAIMS & CAUSE OF ACTION**

54.   Prudential is an insurer and provided LTD coverage to Ms. Nash in accordance with the terms of the Policy. That coverage included LTD benefits arising out of her disability.

55.   The Policy, as part of the  Occidental Petroleum Corporation Welfare Long Term Disability Component Plan, is governed by ERISA. 29 U.S.C. §1001, *et. seq*. Prudential is the Claims Administrator and a named fiduciary under the Plan.

56.   As a Plan fiduciary, Prudential is obligated to handle claims for the benefit of  the

Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. It is also obligated as a fiduciary to conduct its investigation of a claim in a fair, objective and evenhanded manner.

57.     Prudential's adjustment or "adjudication" of the Nash claim was instead biased and outcome oriented. This was in part reflected by its termination of the Nash claim, even after being presented with evidence of her ongoing disability. It was also reflected in Prudential's unreasonable reliance on reviewers who lacked the training, education, and experience to objectively review her claim. Relying on the biased opinions of Dr. Burns and Seacoast Rehabilitation was a breach of Prudential's fiduciary duty to fully, fairly and objectively investigate, evaluate, adjust and pay or deny claims in good faith.

58.     Prudential's interpretation of the Policy and the terms of the Policy was not legally correct. It was also contrary to a plain reading of the Policy language.

59.     Prudential's interpretation of the Policy and Policy language was contrary to that of the average Plan participant and policyholder. It was contrary to the common and ordinary usage of the Policy terms. Alternatively, the Policy language upon which Prudential based its denial decision was ambiguous. The ambiguous nature of those terms require those terms be construed against Prudential and in favor of coverage for the beneficiary.

60.     Prudential's denial was made without substantial supporting evidence. Its decision to deny the Nash claim was instead based upon rank speculation and guesswork. Prudential's denial decision was *de novo* wrong. Alternatively, it was arbitrary and capricious.

61.    On information and belief, Prudential's denial of the Nash claim was not the result of a honest, fair, or objective factual investigation. It was instead motivated by Prudential's desire for financial gain, evidenced by policies, procedures, and practices to profit from the delay in payment or denial of claims. It may also be found in various incentive programs for claims and claims management personnel and in various management directives. Its financial gain is also reflected in the high ROE Prudential gains from retained benefit funds. Prudential's entire claims handling and review process is designed to boost Prudential's profits at the expense of LTD claimants like Ms. Nash.

62.    At all material times, Prudential was acting on behalf of the Plan and in its own capacity as the insurer and Claims Administrator.

63.    Prudential's denial of the Nash claim breached the terms of the Policy and the Plan. Its breach was in violation of 29 U.S.C. §1132(a)(1), entitling Nash to the LTD Policy to which she is entitled, along with pre-judgment interest on the amounts due and unpaid, all for which Ms. Nash now sues.

**V.**
**STANDARD OF REVIEW**

64.    The default standard of review for denial of a benefit claim is *de novo*. Where the Plan or Policy confers discretion on the Claims Administrator, an abuse of discretion standard of review may apply.

65.    The Policy may contain a discretionary clause or language Prudential may construe as affording it discretion to determine eligibility for benefits, to interpret the terms of the Policy, and determine the facts. Prudential's denial under this standard of review, if any, was an abuse of discretion. It was arbitrary and capricious.

10

66.    If discretion applies, the Court should afford Prudential less deference in light of its financial conflict of interest. Prudential's conflict of interest is both structural and actual. Its structural conflict results from its dual role as the adjudicator of the Nash benefit claim and as the potential payor of that claim.

67.    Prudential's actual financial conflict is revealed in the policies, practices, and procedures influencing and motivating claim delays and denials for financial gain. Prudential's financial conflict is also revealed in the high ROE gained from the delay in payment or denial of claims.

68.    Prudential's motivation to deny this claim, on information and belief, was directly driven by its desire to increase its profits. Its claims handling conduct -  including ignoring directly relevant and reliable medical and other evidence of Ms. Nash's health condition and disability, and reliance on biased medical record reviewers who had no contact with Ms. Nash - was prompted by corporate management directives to the claims department and claims personnel to increase revenue and profit by delaying payment and denying or terminating claims. The net effect of those directives and the manner in which they were implemented were designed to achieve this result. The negative impact of these policies was not limited to Ms. Nash, but applied across the board to Prudential disability claimants.

69.    Each of these grounds, on information and belief, was a motive to deny the Nash claim, along with the delay in payment or denial of claims of other Prudential policyholders and claimants.

70.    Prudential, in light of its financial conflict, should be accorded little or no discretion in its claims decision.

71.     Alternatively, the standard of review of this claim should be *de novo,* affording Prudential no discretion in its interpretation of the terms of the Policy and Plan, nor in its factual determinations.

72.     Prudential admitted that it would not be able to decide Ms. Nash's appeal by August 28, 2016, the 90th day of the appeal review period.

73.     The Policy states that if Prudential is unable to make a decision on an appeal within 90 days, "the claim shall be deemed denied on appeal".

74.     The failure of an Administrator to actually exercise discretion granted to it warrants *de novo* review. *Seman v. FMC Corp. Retirement Plan For Hourly Employees*, 334 F.3d 728, 733 (8th Cir. 2003) ("When a plan administrator denies a participant's initial application for benefits and the review panel fails to act on the participant's properly filed appeal, the administrator's decision is subject to judicial review, and the standard of review will be *de novo*").

## VI.
## REQUEST FOR PREJUDGMENT INTEREST & AN ACCOUNTING

75.     Nash requests, in addition to the amount of benefits withheld, prejudgment interest on any such award. She is entitled to prejudgment interest as additional compensation, and pursuant to Texas Insurance Code Texas Insurance Code, Sec. 1103.104, or on principles of equity.

76.     Prudential's policy does not contain a rate of interest payable on the benefit amount wrongfully withheld. Resort must be had to Sec. 1103.104(c) of the Insurance Code. Nash thus requests an accounting in order to determine the amount earned on the funds that should have rightfully been paid to her, and in accordance with Insurance Code Sec. 1103.104(c).

## VII.
## <u>CLAIM FOR ATTORNEYS FEES & COSTS</u>

77.    Nash seeks an award of her reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. She is entitled to recover those fees, together with her costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## <u>PRAYER</u>

78.    Lara Nash, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in her favor and against Defendants The Prudential Insurance Company of America and Occidental Petroleum Corporation Welfare Long Term Disability Component, and issue judgment against each Defendant as follows:

a.    Pay to Ms. Nash all benefits due and owing in accordance with the terms of the Plan and Policy, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

b.    Pay all reasonable attorney's fees incurred and to be incurred by Ms. Nash in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter;

c.    All such other relief, whether at law or in equity, to which Ms. Nash may show herself justly entitled.

Respectfully submitted,


By: _/s/_____
        James C. Plummer, TBA #16075700
        Federal I.D. No. 3692
        jplummer@plummerlawyers.com

13

Amar Raval, TBA # 24046682
S.D. I.D. No 619209
araval@plummerlawyers.com
**PLUMMER | RAVAL**
4203 Montrose Boulevard, Suite 270
Houston, Texas 77006
(713) 522-2887
(713) 522-3605 (Fax)

ATTORNEYS FOR PLAINTIFF

K:\Nash, Lara (2)\Complaint.wpd